[Docket No. 72]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Le. L.,<br><br>    Plaintiff,<br><br>    v.<br><br>DETECTIVE JENNIFER MARCHESE,<br><br>    Defendant. | Civil No. 20-6027 (RMB-MSJ)<br><br>**OPINION (PUBLIC)** |

**RENÉE MARIE BUMB, Chief United States District Judge**

Plaintiff Le. L. is a sergeant in the United States Air Force. In 2018, he was under investigation by the Air Force and Burlington County Prosecutor's Office ("BCPO") for sexual abuse of his eight-year-old daughter, L.L. Detective Jennifer Marchese of the BCPO interviewed L.L. about those allegations in the presence of Special Agents from the United States Air Force Office of Special Investigations. The interview was inconclusive. Accordingly, Detective Marchese informed the Air Force that there was insufficient evidence to charge Plaintiff with the commission of a crime. Nevertheless, the Air Force special agents took Plaintiff into custody and criminally charged him with sexually abusing his daughter.

The Air Force eventually dismissed the charges against Le. L. He filed this suit for malicious prosecution and false arrest. But rather than sue the Air Force—the only entity to take Le. L. into custody and charge him with a crime—he sued Detective

Marchese. He alleges that her interview of L.L. was improperly suggestive, and it was based on her improper questioning that the Air Force brought criminal charges against him.

Detective Marchese has moved for summary judgment.[1] Because Plaintiff has not shown that Detective Marchese initiated a criminal proceeding against him by improperly influencing the Air Force's decision to bring charges or that she took any intentional acts to set the arresting Air Force agents into motion, the Court will **GRANT** summary judgment and **DISMISS** the Complaint.

I.     **FACTUAL BACKGROUND**

On the afternoon of May 23, 2018, Jennifer Marchese, a detective at the BCPO, received a call from a guidance counselor at Atlantis Elementary School expressing concern that a second-grade student, L.L., had been sexually abused by her father, Plaintiff Le. L., a United States Air Force staff sergeant. [SOMF ¶¶ 2, 6; RSOMF ¶¶ 2–3, 6; Docket No. 77, Ex. 14, Deposition Transcript of Le. L. ("Le. L. Depo.") at 30:24–31:5.] L.L. disclosed to the guidance counselor earlier in the day that she was experiencing a burning pain around her genitals and that sometimes, her father touched her in that area. [SOMF ¶ 7 (citing Docket No. 73, Certification of Phoenix

---

[1] The Parties' submissions are referred to herein as follows: (i) Defendant's Brief in Support of Summary Judgment, [Docket No. 72-2], her Statement of Undisputed Material Facts, [Docket No. 72-1 ("SOMF")], and her Reply Brief in Further Support of Summary Judgment, [Docket No. 78 ("Def.'s Reply")]; and (ii) Plaintiff's Brief in Opposition to Summary Judgment, [Docket No. 77 ("Pl.'s Br.")], his Responses to Defendants' SOMF, [Docket No. 77 at 29–31 ("RSOMF")], and his Counterstatement of Undisputed Material Facts, [Docket No. 77 at 31–34 ("CSOMF")].

Meyers in Support of Summary Judgment ("Meyers Certif."), Ex. E); RSOMF ¶ 7.] She also apparently told the guidance counselor that the touching was supposed to be a secret and that she did not want her father to get in trouble. [*Id.*]

Detective Marchese interviewed L.L. at the Burlington County Child Advocacy Center. [SOMF ¶ 8; RSOMF ¶ 8.] Special agents from the United States Air Force Office of Special Investigations ("OSI"), who were also notified of L.L.'s statement to the guidance counselor, were present for the interview, watching from behind a two-way screen. [SOMF ¶¶ 9–10; RSOMF ¶¶ 9–10.] OSI's investigation was separate from Detective Marchese's investigation on behalf of the BCPO. [SOMF ¶ 11; RSOMF ¶ 11.] The interview—which ran for nearly an hour and a half, [CSOMF ¶ 33]—was far from conclusive. Detective Marchese asked L.L. what she talked to the school guidance counselor about. [Meyers Certif., Ex. F (Video Interview of L.L.).] L.L. again explained to Detective Marchese that, sometimes, her father touched her genitals when helping her get ready to go swimming at the pool or at bathtime. [Meyers Certif., Ex. F at 20:15–21:00; 29:00–29:15; [SOMF ¶ 7; RSOMF ¶ 7.] But L.L. could not provide sufficient detail regarding whether the touching occurred in any purposeful, sexualized manner or was simply for bathing, health, or hygiene purposes.[2] ▮

---

[2] ▮

3

███████████████████████████████████████████████

███████████████████████████████

Plaintiff voluntarily appeared for questioning by Detective Marchese at the BCPO later that evening. [Le. L. Depo. at 68:19–70:25.] OSI special agents remained present to observe Plaintiff's interview. [Meyers Certif., Ex. B, Deposition Transcript of Detective Jennifer Marchese ("Marchese Depo.") at 54:15–22.] Also present observing were an assistant prosecutor and Detective Marchese's supervisor. [*Id.*] Detective Marchese questioned Plaintiff about any inappropriate touching of his daughter. [Le. L. Depo at 163:10–164:5] After about ten minutes, Detective Marchese suggested that Plaintiff had sexually abused L.L. which prompted Plaintiff to invoke his right to counsel and end the interview. [*Id.* at 76:20–22, 163:10–164:5.]

The OSI Special Agents escorted Plaintiff out of the BCPO and back to Joint Base McGuire-Dix-Lakehurst where he was formally arrested and charged with sexually assaulting L.L. [SOMF ¶ 13; RSOMF ¶ 13.] Prior to escorting him back to base, OSI informed Detective Marchese that they would be charging Plaintiff with sexually assaulting L.L. Detective Marchese did not agree with that decision. [SOMF ¶ 14; RSOMF ¶ 14.] At her deposition, she testified that she told OSI that she did not agree with its decision to take Plaintiff into custody and charge him with a crime given the inconclusiveness of L.L.'s interview. [SOMF ¶ 14; RSOMF ¶ 14; Marchese Depo. at 51:2–12, 103:9–104:13.]

The BCPO never arrested or filed criminal charges against Plaintiff. [SOMF ¶ 16; RSOMF ¶ 16.][3] The Air Force eventually dropped all criminal charges against Plaintiff and restored his rank and promotions. [SOMF ¶ 17; RSOMF ¶ 17.] But because the Air Force's Central Registry Board found that the incident met the criteria for sexual maltreatment of L.L., it placed Plaintiff on the Department of Defense's sex offender registry. [SOMF ¶¶ 15, 17; RSOMF ¶¶ 15, 17.] Plaintiff alleges that he remains on the registry to this day even though the Air Force dropped the criminal charges. [Docket No. 24, Second Amended Complaint ("SAC") ¶ 25.]

## II. PROCEDURAL BACKGROUND

Although the Air Force was the only entity to pursue criminal charges against Plaintiff, he sued Burlington County, the BCPO, CP&P, and Detective Marchese. [Docket No. 1 at 1.] His First Amended Complaint dropped all defendants other than Detective Marchese and brought claims against her for malicious prosecution, false arrest and imprisonment and loss of consortium, each under 42 U.S.C. § 1983. [Docket No. 12.] Relying mostly on an expert report prepared by Dr. Gerald Cooke, a licensed clinical and forensic psychologist, Plaintiff alleges that Detective Marchese's interview of L.L. was unduly suggestive and produced unreliable responses from L.L. and it was based on those unreliable responses that the Air Force wrongly charged Plaintiff. He alleges that he suffered various injuries as a result of the later-dropped charges

---

[3] The only state entity to bring proceedings against Plaintiff was The New Jersey Division for Child Protection and Permanency ("CP&P"). But a family court judge found CP&P's proofs insufficient to sustain a finding of abuse against Plaintiff. [Meyers Certif., Ex. C at 13.]

5

including remaining on the Department of Defense's sex offender registry, pain and suffering, loss of reputation, and separation from L.L.[4]

Detective Marchese moved to dismiss each claim. [Docket No. 19.] This Court dismissed the malicious prosecution and false arrest and imprisonment claims without prejudice for failure to state a claim as conclusory and formulaic recitations of the elements of the causes of action. *Le. L. v. Burlington Cnty.*, 2021 WL 6125777, at *3–4 (D.N.J. Dec. 28, 2021). The Court dismissed the loss of consortium claim with prejudice because Section 1983 does not support a derivative claim for loss of consortium. *Id*. at *4 (citing *Armstrong v. Sherman*, 2010 WL 2483911 at *5, (D.N.J. June 4, 2010)).

Plaintiff filed his operative Second Amended Complaint alleging claims against Detective Marchese only for malicious prosecution and false arrest and imprisonment. [SAC ¶¶ 36–52.] Detective Marchese filed an answer and moved for summary judgment.

In support of summary judgment Detective Marchese argues that (i) she is not a "person" amenable to suit in her official capacity under 42 U.S.C. § 1983; (ii) the malicious prosecution and false arrest and imprisonment claims fail because Detective Marchese did not initiate a criminal proceeding against Plaintiff and her actions did not set the arresting OSI agents in motion; and (iii) even if those claims do not fail as

---

[4] Plaintiff is no longer separated from L.L. who spends the school year months with Plaintiff and the summer months with her mother. [Le. L. Depo. at 15:9–16.]

a matter of law, she is entitled to qualified immunity. [Def.'s Br. at 1–2.][5] Plaintiff opposed, and Detective Marchese filed a reply brief in further support of summary judgment. The Motion is now ripe for adjudication.

## III.    LEGAL STANDARD

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* at 250.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n.2 (3d Cir.1983). However, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine issue for trial. *Anderson*, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record ... could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a

---

[5] Because the Court will grant summary judgment on all claims, it does not consider Detective Marchese's argument that Dr. Cooke is unqualified to render an expert opinion. [Def.'s Br. at 8; Def.'s Reply at 2.]

"fair-minded" jury could "reasonably" decide.'" *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting FED. R. CIV. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

## IV.  ANALYSIS

### A.  Detective Marchese is Not a "Person" Subject to Section 1983 Liability in Her Official Capacity

Section 1983 authorizes relief against any "person" who acted under color of state law to deprive a plaintiff of a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing 42 U.S.C. § 1983). Even though state law enforcement officials, like prosecutors and detectives, are literally "person[s]," they are not persons subject to suit in their official capacities for damages under Section 1983. *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 856 (3d

Cir. 2014) (state detectives and prosecutors not "persons" amenable to suit under Section 1983 for damages in their official capacities); *Martinez v. Choe*, 2019 WL 6487315, at *2 (D.N.J. Dec. 3, 2019) (same); *Greene v. Perez*, 2016 WL 781690, at *2 (D.N.J. Feb. 29, 2016) (same). That is because the U.S. Supreme Court has held that a Section 1983 suit against a state official acting in her official capacity is the same as suing the State itself, an entity subject to Eleventh Amendment sovereign immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)); *see also Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). So, as long as state law enforcement engages in "classic law enforcement and investigative functions, they act as officers of the State" and are therefore not amenable to suit in their official capacity for damages under Section 1983. *Est. of Lagano*, 769 F.3d at 856. If, however, a state law enforcement officer performs administrative functions "unrelated to the duties involved in criminal prosecution," they act as county officials who are amendable to suit for damages under Section 1983. *Id*. at 855–56 (citing *Coleman v. Kaye*, 87 F.3d 1491, 1505–06 (3d Cir. 1996)); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).

Detective Marchese is not a person amendable to suit in her official capacity under Section 1983. Her investigation on behalf of the BCPO to determine whether Plaintiff engaged in criminal misconduct involved classic law enforcement functions including interviewing L.L., a potential victim, and Plaintiff, the investigation's target. Plaintiff admits as much. [Pl.'s Br. at 14 ("[T]he averred misconduct against Defendant Marchese is directly related to her law enforcement and/or investigative

9

functions[.]").][6] Accordingly, the claims against Detective Marchese in her official capacity fail as a matter of law. The remainder of the analysis considers each claim asserted against Detective Marchese in her personal capacity. *Hafner v. Melo*, 502 U.S. 21 (1991) (state officials sued for damages in personal capacity are "person[s]" subject to Section 1983 liability).

### B.  Malicious Prosecution

To establish a Fourth Amendment malicious prosecution claim under Section 1983, a plaintiff must show that (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).[7]

---

[6] Plaintiff, relying on *Wright v. State*, 778 A.2d 443 (N.J. 2001) argues that the State may be held vicariously liable for the tortious conduct of prosecutors and their investigative subordinates. [Pl.'s Br. at 13.] But *Wright* was not a Section 1983 case. It was brought under the New Jersey Tort Claims Act which abrogates sovereign immunity against the State for acts of negligence. And, unlike the New Jersey Tort Claims Act, Section 1983 does *not* abrogate sovereign immunity such that state officials can be held liable for damages in their official capacity. *Will*, 491 U.S. at 66 (explaining that Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity).

[7] Plaintiff's Second Amended Complaint bases his claim for malicious prosecution solely under the Fourth Amendment. [SAC ¶ 41.]

"Prosecutors, not police, are generally responsible for initiating criminal proceedings." *Dress v. Falls Twp.*, 2017 WL 2215270, at *3 (E.D. Pa. May 19, 2017). So, in order to hold Detective Marchese responsible for initiating a criminal proceeding against Plaintiff, she must have done something to affirmatively "influence[] or participate[] in the decision to institute [the] criminal proceeding[] such as "conceal [or] misrepresent material facts" to the prosecutor. *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014); *Gallo v. City of Phila.*, 161 F.3d 217, 220 n.2 (3d Cir. 1998) ("Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed material information from, prosecuting authorities."); *Dress*, 2017 WL 2215270, at *3 ("To hold a police officer responsible for initiating a criminal proceeding, a plaintiff needs to demonstrate that the officer knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."). Put differently, the defendant-officer's affirmative misconduct, misrepresentations, encouragement, or pressure must have been the but-for and the proximate cause of the criminal prosecution. *See Sykes v. Anderson*, 625 F.3d 294, 308, 308 n.5 (6th Cir. 2010) (plaintiff "must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute" when considered against traditional tort causation principles) (cleaned up); *Cruz ex rel. Alvarez v. City of Phila.*, 2008 WL 4347529, at *11 (E.D. Pa. Sept. 23, 2008) ("[Detectives] may, however, be liable for malicious prosecution where the plaintiff can establish that the [] officers exerted pressure or influence on the prosecutor to initiate proceedings or

11

made knowing misstatements to the prosecutor."); *see also* WILLIAM PROSSER, LAW OF TORTS § 119 (4th ed. 1971) (common law malicious prosecution claim requires defendant to "take[] some active part in instigating or encouraging the prosecution" and that her "persuasion was the determining factor in inducing the [prosecution]"); *Chiaverini v. City of Napoleon, Ohio*, 144 S. Ct. 1745, 1750 (2024) (elements of Fourth Amendment malicious prosecution claim shaped by common law tort principles).

Plaintiff's claim for malicious prosecution fails as a matter of law because there is no evidence to support that Detective Marchese did anything to affirmatively cause the Air Force to bring the criminal charges against him. She did not misrepresent or furnish false information to OSI regarding L.L.'s interview or otherwise advise, encourage, or pressure OSI to bring charges. Indeed, OSI was present for the interview and came to its own independent conclusion related to its own separate investigation that Plaintiff should be court martialed. *Cf. Stief v. Robeson Twp.*, 2021 WL 2137588, at *6 (E.D. Pa. May 26, 2021) (no allegations to permit reasonable inference that officer interfered in any way with the prosecutor's independent decision to bring charges). And Detective Marchese *disagreed* with OSI's decision to charge Plaintiff. She testified that she told the OSI agents that she disagreed with its decision to take Plaintiff into custody and charge him with a child sex abuse crime given the inconclusiveness of L.L.'s interview. [SOMF ¶ 14; RSOMF ¶ 14; Marchese Depo. at 51:2–12.]

Plaintiff claims that Detective Marchese "technically" initiated a criminal proceeding against him and characterizes Detective Marchese's testimony as "self-serving." [Pl.'s Br. at 15.] But Plaintiff fails to point to any concrete evidence in the

12

record establishing a genuine issue of material fact that Detective Marchese encouraged or influenced OSI to bring criminal charges. *Orsatti*, 71 F.3d at 484 (nonmovant must point to concrete evidence in the record to defeat summary judgment). The record, in fact, reflects the opposite—Detective Marchese disagreed with OSI's decision to charge. Additionally, if Detective Marchese encouraged or influenced OSI to bring criminal charges because she believed that there was probable cause that Plaintiff committed a crime, it would have made sense for the BCPO to likewise bring criminal charges against Plaintiff. But it did not. [SOMF ¶ 16; RSOMF ¶ 16.]

Similarly, Plaintiff argues that Detective Marchese was "one of the only persons who had the knowledge and ability to conceal or misrepresent the veracity and reliability [of] her interview[] with L.L" based on her "extensive experience and training in handling child sexual abuse victim interviews." [Pl.'s Br. at 15.] Even if that were true,[8] Plaintiff fails to point to anywhere in the record to create a genuine dispute of material fact that Detective Marchese in fact concealed or misrepresented the veracity and reliability of L.L.'s interview to OSI. Plaintiff could have called the OSI agents to testify at a deposition regarding their interactions with Detective Marchese to establish a genuine dispute of material fact. He did not do so. Accordingly, the Court

---

[8] Detective Marchese did *not* have extensive experience in handling child sexual abuse victim interviews. She testified that she was new to the child sex abuse unit at the time of L.L.'s interview and that, accordingly, her supervisor was present monitoring the interview. [*See* Def.'s Reply at 8 (citing Marchese Depo. at 12:3–18).]

will **GRANT** summary judgment for Defendant Marchese on the malicious prosecution claim.[9]

### C. False Arrest/Imprisonment

A claim for false arrest or false imprisonment requires a plaintiff to show that he was unlawfully detained without probable cause. *James v. City of Wilkes-Barre*, 700 F.3d 675, 683 (3d Cir. 2012). Without allegations that Detective Marchese personally arrested or imprisoned Plaintiff (which she did not), Plaintiff must show that Detective Marchese's "intentional actions set the arresting [OSI agents] in motion." *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000).

Plaintiff has not done so. Without any evidentiary support, Plaintiff baldly concludes that Defendant Marchese's "joint investigation" with OSI "greatly influenced" the Air Force's decision to take Plaintiff into custody. As an initial matter, Plaintiff has admitted that OSI's investigation was concurrent, not joint, with Burlington County's investigation. [SOMF ¶ 11; RSOMF ¶ 11.] Moreover, the record evidence (again) establishes precisely the opposite—Detective Marchese attempted to influence OSI *not* to press charges because she believed that there was no probable cause to arrest Plaintiff. [SOMF ¶ 14; RSOMF ¶ 14; Marchese Depo. at 51:2–7.] OSI

---

[9] And even if Plaintiff could establish that Detective Marchese instituted a criminal proceeding against him, there is no evidence in the record that she did so maliciously. Nor does Plaintiff attempt to argue otherwise in his summary judgment brief. [Pl.'s Br. at 15–16 (arguing only Detective Marchese instituted a criminal proceeding against him).] A summary judgment opponent cannot "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992). He must establish the essential elements of his claim to survive summary judgment.

proceeded to bring charges against Plaintiff anyway. Because Detective Marchese "did not initiate or even actively participate in the arrest or criminal prosecution of [P]laintiff," the Court will **GRANT** summary judgment for Defendant Marchese on the false arrest/imprisonment claim. *Morales v. Busbee*, 972 F. Supp. 254, 265 (D.N.J. 1997); *Berg*, 219 F.3d at 274 (to avoid summary judgment on false arrest claim, plaintiff "must point to some evidence from which a reasonable jury could conclude that [defendant] intentionally caused his arrest"); *Garcia v. City of Paterson*, 2015 WL 857801, at *4 (D.N.J. Feb. 27, 2015) (granting summary judgment where there was no evidence suggesting that defendant officer instigated the arrest, or requested that plaintiffs be arrested).[10]

---

[10] Even if Plaintiff could somehow establish each element of his malicious prosecution and false arrest/imprisonment claims, the Court finds that Detective Marchese would be entitled to qualified immunity. Qualified immunity shields state officials sued in their personal capacity for damages so long as their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "A right is clearly established where existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Williams v. Sec'y Pennsylvania Dep't of Corr.*, --- F.4th ----, 2024 WL 4262139, at *7 (3d Cir. 2024) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). Plaintiff generically points to the clearly established right to be free from unreasonable searches and seizures and to due process. [Pl.'s Br. at 20.] But the constitutional right for purposes of qualified immunity must be defined at a much more specific level of generality "to determine 'whether the violative nature of *particular* conduct is clearly established.'" *Williams*, 2024 WL 4262139, at *8 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original)). Plaintiff fails to cite to any clearly established precedent establishing a Fourth Amendment violation against a state law enforcement for conducting a suggestive interview of a potential child sex abuse victim during the course of a criminal investigation. *Cf. Gausvik v. Perez*, 345 F.3d 813, 816 (9th Cir. 2003) (reversing denial of qualified immunity on fabrication of evidence claim where officer used "overbearing tactics" in interviewing child abuse victim); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (affirming grant of qualified immunity on fabrication of evidence claim and holding that there is "no constitutional due

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be **GRANTED**. An accompanying Order shall issue.

**October 22, 2024**                                       **s/Renée Marie Bumb**
Date                                                                  RENÉE MARIE BUMB
                                                                                    Chief United States District Judge

---

process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way").